Frank E. MARLEY, Jr., Plaintiff,

v.

Thornton WRIGHT, Jr., David M. Harbour, Kim Fowler, and Richard L. Hull, Defendants.

No. CIV–90–974–P.

United States District Court, W.D. Oklahoma.

June 17, 1991.

Frank E. Marley, Jr., pro se.

Frederick W. Southern, Jr., Oklahoma City, Okl., or Midwest City, Okl., Richard W. Freeman, Jr., Oklahoma City, Okl., for defendants.

## ORDER IMPOSING RULE 11 SANCTIONS

PHILLIPS, District Judge.

### I. INTRODUCTION

Plaintiff Frank E. Marley, Jr. ("Marley"), a licensed attorney and member of the Oklahoma Bar Association and the Federal Bar for the Western District of Oklahoma, sued two state court judges, their court reporter, and others. With respect to the judges and court reporter, he alleged they violated his constitutional rights by conducting an *in camera* interview with his minor children who were the subject of a

custody dispute between him and his ex-wife, and by refusing to provide him a transcript of the interview. Marley represented himself in this action.

On August 20, 1990, the Court dismissed the claims against the judges and court reporter on the basis of absolute judicial immunity. On August 23, 1990, during a status conference at which Marley appeared by telephone, the Court announced it was considering Rule 11 sanctions against Marley for suing the judges and court reporter in view of settled law that these defendants are absolutely immune from actions for damages for acts taken in the judicial process, even if the acts were in error or were in excess of their authority. Subsequently, on October 31, 1990, the Court ordered Marley to show cause why Rule 11 sanctions should not be imposed.[1] In the show cause order the Court also directed defendants' counsel to file an affidavit setting forth defendants' costs and attorney's fees incurred in defending the action, and granted Marley leave to object to the reasonableness of the costs and fees if he desired to do so. The Court also granted Marley leave to file a brief on the issue of why he should not be sanctioned under Rule 11, and granted defendants leave to respond, if they desired to do so.

Defendants' counsel filed their affidavits, as directed, setting forth the following fees:

Sue Wycoff, assistant attorney general, deputy chief, federal division: 12 hours at $125 per hour—$1,500.

Guy L. Hurst, assistant attorney general, deputy chief, civil division: 8 hours at $125 per hour—$1,000.

Jon Morgan, legal intern, federal division, attorney general's office: 20 hours at $50 per hour—$1,000.

Affidavit Ordered by Court in Support of Motion for Attorney's Fees (Nov. 9, 1990).

Likewise, Marley filed his brief on the issue of why he should not be sanctioned. The first two paragraphs of Marley's brief are irrelevant to the issue of whether Rule 11 sanctions are warranted for filing a frivolous complaint. Marley states:

On October 31, 1990, the Court entered its Order to Show Cause Why Sanctions Should Not be Imposed. In response thereto, Plaintiff urges this Court to review and appreciate the full impact of its statements of prejudice on August 20, 1990. This court noted its mind was made up and that it had decided this matter thereby cutting off Plaintiff's route to impartiality. The discretion of the Court being fully exercised, Plaintiff was without any adequate opportunity to bring any matters before it, at least from that point on, that would have made any difference in the Court's view.

The Court had previously announced it[s] resignation from the bench to be effective at a date prior to July 1, 1991. In its haste, the Court did not apply the demeanor which allowed for the citing of cases, discovery of further facts or the presentation of a Plaintiff's case. Further the Court has reached to the far corners of the Rule 11, FRCP, to impose the sanctions it will undoubtedly impose.

Plaintiff's Brief in Response to Order to Show Cause Why Sanctions Should Not Be Imposed at 1 (Nov. 9, 1990) (hereinafter "Plaintiff's Brief").

In the third paragraph of his brief, Marley argues sanctions are not warranted because he had a "good faith belief" that his lawsuit would result in a modification of the doctrine of absolute judicial immunity and a "possible reversal" of the harsh results of that doctrine. Plaintiff's Brief at

---

**1.** The case was dismissed in its entirety on October 26, 1990, when the sole remaining defendant's motion to dismiss was granted. Notwithstanding the dismissal, the Court retains jurisdiction to impose Rule 11 sanctions for filing a frivolous complaint. *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2455–57, 110 L.Ed.2d 359 (1990). The Supreme Court explained:

Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated. *Id.* at 2456.

1. In the fourth and last paragraph Marley urges the Court not to impose sanctions "as there is no basis for this Court to conclude that Plaintiff should be sanctioned for seeking to vindicate his constitutional rights as heretofore Plead [sic]." Plaintiff's Brief at 2. Defendants subsequently filed a document pointing out Marley failed to serve his brief to them as required by the Federal Rules of Civil Procedure, and advising the Court they did not desire to respond to Marley's brief. Notice to the Court (Nov. 21, 1990).

## II. RULE 11 SANCTIONS

The signature of an attorney or a party on the complaint or other pleading in a suit in federal court constitutes a certificate that:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*White v. General Motors Corp.*, 908 F.2d 675, 680 (10th Cir.1990) (quoting Fed. R.Civ.P. 11).

Every segment of Rule 11 comes into play here. Did Marley make a reasonable inquiry before filing the complaint? Is the complaint well grounded in fact? Is the complaint warranted by a good faith argument for the modification or reversal of the doctrine of absolute judicial immunity? Was the complaint filed for a proper purpose and not for the purpose of harassing the state judges and court reporter? If the answer to any one of these questions is "no", sanctions are not only justified but must be imposed upon Marley. "If a pleading ... is signed in violation of this rule, the court ... *shall* impose upon the person who signed it ... an appropriate sanction...." Fed.R.Civ.P. 11 (emphasis added). Moreover, the sanction may include payment of the other parties' "reasonable expenses incurred because of the filing ... including a reasonable attorney's fee." *Id.*

Marley's amended complaint consists of seven single-spaced typewritten pages and contains allegations under the following headings: "denial of equal protection of laws"; "deprivation of life, liberty and property without the due process of law"; "deprivation of substantive due process of law"; "violation of the State of Oklahoma's Code of Judicial Conduct denies equal protection of laws and promoted deprivation of due process of law [sic]"; and "civil conspiracy".

While the amended complaint is far from a model of clarity, the court has carefully examined it, and indeed the entire file, and has discerned the following. The instant action arises out of a divorce proceeding in the District Court of Oklahoma County, Oklahoma (*Lorraine Marley v. Frank E. Marley*, No. JFD–83–6002), and subsequent proceedings concerning failure to pay child support and change of custody. Apparently there were, in addition to the proceedings in Oklahoma County, two out-of-state actions: *In re Damian Keith Marley, a Minor Child*, No. 90–CI–01640, and *Ex parte Damian Keith Marley*, No. 89–CI–21594, both filed in the District Court, 57th Judicial District, Bexar County (San Antonio), Texas. The amended complaint is based upon alleged violations of Marley's constitutional rights concerning Marley's application for change of custody from his ex-wife to himself. Marley alleged Judge Wright, to whom the custody proceeding was assigned, met privately with Marley's children who were the subject of the custody proceeding, and that such *in camera* interview deprived Marley of his constitutional rights to procedural due process, substantive due process, and equal protection. Marley also alleged that after Judge Wright recused himself at Marley's request, Judge Wright conspired with Judge Harbour, to whom the custody matter was subsequently assigned, and with Fowler, Judge Wright's court reporter, to deprive Marley of his constitutional rights by refusing to provide Marley a transcript of the *in camera* interview with Marley's children. Finally, Marley alleged Judge

Wright violated the Oklahoma Judicial Code.[2]

Marley prayed for an unspecified order that would protect his rights, unspecified compensatory damages, a "great and noteworthy sum" for punitive damages, and costs.

■ The United States Supreme Court has long recognized absolute civil immunity of judges for conduct within their judicial domain. *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (absolute judicial immunity); *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) (absolute quasi-judicial immunity); *see also Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1477 (10th Cir.1990); *Turney v. O'Toole*, 898 F.2d 1470 (10th Cir.1990); *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir.1989); *Van Sickle v. Holloway*, 791 F.2d 1431 (10th Cir.1986). Further, it is well settled that the doctrine of absolute immunity is applicable in civil rights actions brought pursuant to 42 U.S.C. § 1983. *Turney*, 898 F.2d at 1472 (citing numerous cases). The Supreme Court has also recognized it is not uncommon for a losing litigant in one forum to file a civil rights action in another forum, charging the participants in the first forum with "unconstitutional animus." *Butz*, 438 U.S. at 512, 98 S.Ct. at 2913.

■ The test to determine whether a judge is entitled to immunity is whether, at the time of the challenged action, the judge had jurisdiction over the subject matter. *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104. The scope of the judge's jurisdiction must be construed broadly. *Id.*

■ Judges are not deprived of judicial immunity because the actions they took were in error, were done maliciously, or were in excess of their authority. *Van Sickle*, 791 F.2d at 1435. Rather, they are subject to liability only when they have acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356, 98 S.Ct. at 1105 (citing *Bradley v. Fisher*, 80 U.S. (13

Wall.) 335, 351, 20 L.Ed. 646 (1872)); *Van Sickle*, 791 F.2d at 1435.

■ Clerks of the court, including court reporters, have absolute quasi-judicial immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction. *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir.1988); *Formanek v. Arment*, 737 F.Supp. 72, 73 (E.D.Mo.1990); *Thurston v. Robison*, 603 F.Supp. 336, 338–39 (D.Nev.1985).

■ In the instant case, Marley's amended complaint contains conclusory allegations that Judge Wright acted in disregard of the law, displayed partiality and exceeded his authority and discretion. The only allegations against Judge Harbour are that he followed the "advice and consent" of Judge Wright, who allegedly met privately and secretly with Judge Harbour, and that Judge Harbour did not respond to a personal letter sent to him by Marley asking for a copy of the transcript of the interview. The only allegation against Fowler, the court reporter, is that she also refused to give Marley a copy of the transcript when Judge Harbour ordered her not to. Such conduct, even if true with respect to all three defendants, would not deprive them of absolute immunity. *Van Sickle*, 791 F.2d at 1435; *Thurston*, 603 F.Supp. at 338–39. In *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475 (10th Cir.1990), plaintiffs filed a lawsuit against a state court judge and others, alleging violations of 42 U.S.C. § 1983. Plaintiffs' claim against the state court judge was based on the theory that he acted absent jurisdiction because, they alleged, he had no jurisdiction over the Crabtree children. The district court dismissed the claim against the state judge on the basis of absolute judicial immunity. On appeal, the Tenth Circuit affirmed the dismissal, saying: "We hold that no attorney, charged with the responsibility of reading the Supreme Court's decision in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978),

**2.** Defendants advised the Court that plaintiff's judicial complaint against Judge Wright was

investigated and dismissed by the Council on Judicial Complaints.

and our opinion in *Van Sickle v. Holloway*, 791 F.2d 1431 (10th Cir.1986), could believe that absolute judicial immunity would not bar the action against Judge Cook." *Crabtree*, 904 F.2d at 1477 (citations omitted).

The doctrine of absolute judicial immunity is well settled and its application to the instant case is clear. The Court finds Marley's amended complaint, to the extent it alleges claims against the two state judges and court reporter, was not warranted by existing law nor by a good faith argument for the extension, modification, or reversal of existing law.

■■■ Moreover, noticeably absent from Marley's show cause brief is an assertion of prefiling inquiry conducted by Marley. Rule 11 requires Marley to conduct "reasonable inquiry" into the factual and legal bases of his claim before filing the complaint. *White v. General Motors Corp.*, 908 F.2d at 682–83. A plaintiff must not only inquire into the facts of his or her claims but must also "act reasonably given the results of [those] inquiries." *Id.* at 682. "Part of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case." *Id.* (citing Schwarzer, *Rule 11 Revisited*, 101 Harv.L.Rev. 1013, 1023–24 (1988)).

In this case, Marley is an attorney. For Rule 11 purposes, his prefiling investigation is evaluated under the "objectively reasonable" standard. *White*, 908 F.2d at 680. It is not enough that Marley subjectively believed his argument would result in the modification or reversal of the doctrine of judicial immunity. Rather, "the belief must be in accord with what a reasonable, competent attorney would believe under the circumstances." *Id.* Moreover, it is not enough that a competent attorney could have stated a non-sanctionable claim based on the same facts and law; the offending attorney must state a non-sanctionable claim. *Id.* "Thus, plaintiffs may not

shield their own incompetence by arguing that, while they failed to make a colorable argument, a competent attorney would have done so." *Id.* The Court finds Marley's prefiling inquiry into the factual and legal bases of his claims was insufficient. The Court also finds Marley filed this action for an improper purpose, to harass the state judges and court reporter. Marley not only filed this lawsuit but also lodged a complaint with the Oklahoma Council on Judicial Complaints.

The Court does not intend this Order to chill innovative legal advocacy. It is well settled that "Rule 11 should not be used to discourage advocacy, including that which challenges existing law." *White*, 908 F.2d at 683. Nor are sanctions to be automatically imposed against the losing side of an issue. Only through courageous advocacy have longstanding legal principles been overturned. *See e.g., Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (overturning the "separate but equal" doctrine in public education); *Vanderpool v. State of Oklahoma*, 672 P.2d 1153 (Okla.1983) (modifying doctrine of governmental immunity).

The Court finds, however, this is not such a case. Rather, in this case a disgruntled litigant happens to have a license to practice law.[3] He used that license not to define the outer boundaries of judicial immunity but to harass judges and judicial personnel who rendered a decision he did not like. While sanctions in this Court are rendered rarely and reluctantly, they are appropriate in this case.

Counsel submitted affidavits supporting an expenditure of attorney's fees in the total amount of $3,500. Marley, though given the opportunity to object to the reasonableness of these fees, chose not to do so. The Court finds the fees reasonable. Accordingly, Marley is sanctioned in the amount of $3,500.[4]

---

**3.** As noted previously, Marley is a licensed member of the Oklahoma Bar Association and the Federal Bar for the Western District of Oklahoma.

**4.** *See also Chambers v. Nasco, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (A federal

court has inherent power to punish conduct which abuses the judicial process, including the power to assess sanctions ranging from dismissal of a lawsuit to an assessment of attorney's

## III. CONCLUSION

For the reasons set forth above, Rule 11 sanctions in the total amount of $3,500 are imposed against plaintiff Frank E. Marley, Jr. Payment shall be made in favor of defendants Wright, Harbour and Fowler, on or before July 22, 1991.

In the event Marley desires to appeal this order, the $3,500 shall be deposited with the Clerk of this Court on or before July 22, 1991, to be held in an interest-bearing account and to be disbursed by the Clerk upon final resolution of this matter.

IT IS SO ORDERED.

fees. Nothing in Rule 11, 28 U.S.C. § 1927, or any other federal rule of civil procedure displaces a federal court's inherent power to impose attorney's fees as a sanction for bad faith conduct.).